UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, | Case No. 1:15-cv-328 |
| Plaintiff, | Judge Timothy S. Black |
| v. | |
| MYRON TRACY BARKER, | |
| Defendant. | |

**ORDER GRANTING PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD AND FOR ENTRY OF FINAL JUDGMENT (Doc. 1)**

This civil action is before the Court on Plaintiff's motion to confirm arbitration award and for entry of final judgment (Doc. 1). Defendant did not respond. Accordingly, the Court ordered Defendant to show cause why the motion should not be construed as unopposed and granted. (Doc. 9). Again, Defendant did not respond.[1]

**I. BACKGROUND**

A.  The Promissory Note

Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") is a national securities brokerage firm and a member of the Financial Industry Regulatory Authority ("FINRA"),

---

[1] Defendant filed a motion for an extension of time to file a response to the order to show cause and to the motion to confirm arbitration award. (Doc. 12). The Court granted a twenty-one day extension of time to respond. Defendant subsequently filed an unopposed motion for an additional extension of time to file a response. The Court granted an extension and ordered Defendant to file his response on or before February 5, 2016. On February 11, 2016, having received no response, the Court entered a Notation Order stating that the Court intends to rule on Plaintiff's motion as unopposed, absent the filing of a motion citing extraordinary circumstances for an extension on or before February 12, 2016. No motion for extension was filed, nor was a responsive motion ever filed.

a securities industry self-regulatory organization.[2] Merrill Lynch is a citizen of Delaware, where it is incorporated, and of New York, where it maintains its principal place of business. Defendant Barker resides in Kentucky, and from June 8, 2007 until August 18, 2012, he worked as a Financial Advisor in Merrill Lynch's office in Cincinnati, Ohio.

When Barker began his employment with Merrill Lynch, he received a loan from Merrill Lynch in the amount of $605,674.00. He simultaneously entered into a Promissory Note in which he promised to repay the loan amount with interest at 5.25% per year. (Doc. 1-3, ¶ 1). Pursuant to the Promissory Note, Barker also agreed to pay Merrill Lynch's reasonable attorney's fees in the event legal proceedings were required for collection of any outstanding balances under the Promissory Note. (*Id.* at 4).

On December 1, 2009, Barker executed a Promissory Note Modification and Extension Agreement ("Modified Note"). (Doc. 1-4). The Modified Note extended the length of the loan repayment period and reduced the annual interest rate of Barker's original Promissory Note. By executing the Modified Note, Barker agreed to repay to Merrill Lynch the remaining principal balance on the Promissory Note in the amount of $460,305.00, with interest at 2.95% per year on the unpaid principal balance of the original Promissory Note. (*Id.* at §§ 1-2). Additionally, pursuant to the Modified Note,

---

[2] Because Defendant failed to respond to the motion to confirm arbitration award, the Court accepts the facts set forth in Plaintiff's motion as true. See *Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399, 404–05 (6th Cir.1992) (holding that a district court properly relies upon the facts provided by a moving party when a motion for summary judgment goes unopposed).

Barker agreed to pay reasonable costs and attorney's fees if legal proceedings were required for collection of the Promissory Note debt. (*Id.* at § 5.).

Barker voluntarily resigned from Merrill Lynch on August 17, 2012. When his employment with Merrill Lynch ended, Barker owed $298,439.40, plus interest ("Outstanding Balance") on the Modified Note. Pursuant to the terms of the Modified Note, this Outstanding Balance became due and immediately payable when Barker's employment ended. (*Id.* at § 3).

B. Initiation of the Arbitration Action

Merrill Lynch demanded repayment; however, Barker failed to repay the balance of his Modified Note. Therefore, on December 3, 2012, Merrill Lynch instituted an arbitration action against Barker in FINRA Dispute Resolution, captioned *Merrill Lynch, Pierce, Fenner & Smith Incorporated v. Tracy Barker*, FINRA No. 12-04150, to collect the balance owed on the Modified Note, plus interest, costs, and attorney's fees. Barker agreed to arbitrate any dispute arising from his employment with Merrill Lynch, including the dispute over repayment of his loan from Merrill Lynch, in his FINRA Form U4 Uniform Application for Securities Industry Registration ("Form U4"), which Barker and Merrill Lynch signed when Barker began working for Merrill Lynch. (Doc. 1-5). Specifically, Barker agreed "to arbitrate any dispute, claim or controversy that may arise between [him] and my firm [Merrill Lynch] . . . that is required to be arbitrated under the rules" of FINRA. (*Id.* at 11, ¶ 5). Barker also agreed that "any arbitration award rendered against [him] may be entered as a judgment in any court of competent jurisdiction." *Id.*

3

The FINRA Code of Arbitration Procedure ("FINRA Rules") required Merrill Lynch and Barker to arbitrate their dispute over the Note balance. Specifically, FINRA Rules require member firms, like Merrill Lynch, and FINRA-registered individuals, such as Barker, to arbitrate any disputes between them that arise out of their business activities. FINRA Rule 13200. Accordingly, Merrill Lynch and Barker were bound to submit their dispute to FINRA arbitration for resolution.

On September 19, 2013, Barker and Merrill Lynch entered into a confidential Settlement Agreement and Release ("Settlement Agreement") regarding the claims in dispute in the FINRA arbitration. Barker and Merrill Lynch agreed to the entry of the Award in the FINRA action and presented the Award to FINRA for entry.

C.     The Arbitration Award

On May 20, 2014, FINRA served the parties with the Arbitrator's Award, which stated that: (1) Barker is liable for and shall pay to Merrill Lynch the sum of $298,439.40 in compensatory damages; (2) Barker is liable for and shall pay to Merrill Lynch interest on the above-stated sum at the rate of 2.95% per annum from and including August 17, 2012 through and including the date the Award is paid in full; (3) Barker is liable for and shall pay to Merrill Lynch the sum of $7,062.95 in attorney's fees pursuant to the terms of the Promissory Note; and (4) Barker is liable and shall pay to Merrill Lynch the sum of $3,841.12 in costs pursuant to the terms of the Note. (Doc. 1-2 at 7). The Award also provided that the $298,439.40 in compensatory damages was to be reduced by "any

payments [Merrill Lynch] previously received from Barker." (*Id.*). Merrill Lynch has received a total of $23,000.00 in payments from Barker pursuant to the Settlement Agreement, reducing the amount of compensatory damages to $275,439.40, plus interest, costs, and attorney's fees.

## II. ANALYSIS

Pursuant to the Federal Arbitration Act, if the parties have agreed to judicial confirmation of an arbitration award, then at any time within one year after the award is made, any party to the arbitration may seek to confirm it. 9 U.S.C. § 9; *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 587 n.6 (2008). "[C]onfirmation is a summary proceeding and the court *must* confirm the award where the award is not vacated, modified or corrected." *Wachovia Securities, Inc. v. Gangale*, 125 F. App'x 671, 676 (6th Cir. 2005) (emphasis in original), citing 9 U.S.C. § 9 ("the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."). Thus, sections 10 and 11 of the Federal Arbitration Act provide the "exclusive regime" for federal court review of an arbitrator's award."[3] *Willacy v. Marotta*, 2016 WL 278796, at *2 (N.D. Ohio Jan. 22, 2016) (citing *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378 (6th Cir. 2008)). The Court may not reconsider the merits of an award, even when parties allege that the award rests on errors

---

[3] Sections 10 and 11 focus on arbitral conduct, addressing "egregious departures from the parties' agreed-upon arbitration: 'corruption,' 'fraud,' 'evident partiality,' 'misconduct,' 'misbehavior,' 'exceed[ing] ... powers,' 'evident material miscalculation,' 'evident material mistake,' 'award[s] upon a matter not submitted'; the only ground with any softer focus is 'imperfect[ions],' and a court may correct those only if they go to '[a] matter of form not affecting the merits.'" *Hall Street Assoc.*, 552 U.S. at 586.

of fact or on misinterpretation of an agreement. *Wachovia Securities*, 125 F. App'x at 677.

Accordingly, "the plain language of the Federal Arbitration Act presumes that arbitration awards will be confirmed," and courts therefore play a "limited role in confirming an arbitration award under the Federal Arbitration Act." *Id.*; *Shelby Cty. Health Care Corp. v. A.F.S.C.M.E., Local 1733*, 967 F.2d 1091, 1094 (6th Cir.1992). This limited role is appropriate since "the parties have contracted for a decision by arbitrators, not the Court." *Wachovia Securities*, 125 F. App'x at 677. "As a matter of law, the federal courts are merely courts of enforcement where the award has not been vacated, modified or corrected." *Id.,* citing 9 U.S.C. § 9. Indeed, "'[i]n an ordinary arbitration confirmation proceeding, the Court merely converts an arbitration award into a final judgment." *Farmers Crop Ins. Alliance v. Laux*, 422 F. Supp. 2d 898, 899 (S.D. Ohio 2006).

The FAA applies to agreements to arbitrate included in contracts "evidencing a transaction in commerce." 9 U.S.C. § 2; *Stout v. Byrider*, 50 F. Supp. 2d 733, 735 (N.D. Ohio 1999). Here, the FAA applies to Barker's agreement to arbitrate controversies arising from his Merrill Lynch employment because his agreement to arbitrate, contained within the Form U4, is a contract evidencing a transaction involving interstate commerce. Defendant's agreement to arbitrate was included as part of his Form U4, a securities industry registration document that he entered into so that he could work as a Financial Advisor for Merrill Lynch, providing financial advisory services to customers in multiple

states. The FAA applies to this arbitration agreement. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-24 & n.2 (1991) (holding that the FAA is applicable to arbitration clauses contained in securities industry regulation applications).

Moreover, Defendant consented to judicial confirmation of the Award. Defendant explicitly agreed in his Form U4 that "any arbitration award against [him] may be entered as a judgment in any court of competent jurisdiction." Finally, the award has not been vacated, modified, or corrected, and the time for seeking to vacate, modify, or correct the award has expired. 9 U.S.C. § 12 (stating, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered").

As a result, confirmation of the Award is required pursuant to section 9 of the FAA.

### III. CONCLUSION

Accordingly, for the foregoing reasons, Plaintiff's motion (Doc. 1) is **GRANTED**. The award issued in FINRA Case Number 12-04150 and attached as Exhibit A to Plaintiff's motion is hereby **CONFIRMED** in all respects. Judgment shall be entered in favor of Plaintiff and against Defendant, for: (a) $275,439.40 in compensatory damages; (b) interest at 2.95% per annum on the amount of $275,439.40, from August 17, 2012 until Defendant fully pays the $275,439.40 to Merrill Lynch; (c) $3,841.12 in costs; and (d) $7,062.95 in attorney's fees.

The Clerk shall enter judgment accordingly, whereupon this civil action is **TERMINATED** in this Court.

    **IT IS SO ORDERED**.

Date:  <u>2/29/16</u>                                      <u>*s/ Timothy S. Black*</u>
                                                            Timothy S. Black
                                                            United States District Judge